Day, J.
This petition in error brings in review a judgment of the court of common pleas, in a proceeding under the 534th section ■of the code of civil procedure, which authorizes courts to modify or vacate their own judgments, for causes therein specified.
The plaintiffs in that proceeding were required, by the 536th section of the code, to “ set forth the judgment or order, the grounds to vacate or modify it, and the defense to the action.” By the next section, the court is authorized to “ first try and decide upon the .grounds to vacate or modify a judgment or order, before trying or deciding upon the validity of the defense.” In section 538, it is provided that “ a judgment shall not be vacated on motion or petition, until it is adjudged that there is a valid defense to the action in which the judgment is rendered.”
The court found that the proof did not sustain any of the alleged ■grounds for vacating the judgment, except that it was taken for more than was legally due to the plaintiff therein, thus bringing the case within the provisions of the ninth clause of said section 534. The court, moreover, found the amount of excess for which said judgment was rendered above the sum due, which the plaintiff therein remitted.
*The judgment, having been thus reduced by the remittitur, was, upon the finding of the court, for no more than was due to the plaintiff therein, and, therefore, there no longer remained a •statutory ground for its vacation; nor, indeed, under the holding .of the court, could it be “ adjudged that there was a valid defense to the action in which the judgment was rendered,” as is required to be done by said section 538, before such judgment can be vacated.
The petition of the plaintiffs in said proceeding was, therefore, iproperly dismissed; unless, under the facts as found by the court, the bill, on which the judgment was rendered, was 11 wholly void in law,” as claimed by the plaintiffs.
This is the question presented for our determination, and is decisive of the case.
, The judgment was rendered on a bill for $4,000, which, it is ■claimed, was vitiated by an illegal consideration. Numerous authorities cited by counsel for plaintiffs show that, if the whole or ,any part of the consideration of the bill was illegal, or grew directly out of an unlawful transaction, then the bill is entirely void, 'll Wheat. 258. Nor is this disputed. But the question is, whether ■the case, upon the facts as shown by the record, comes within the *127 principle stated. Was the consideration of this bill illegal, or directly connected with an unlawful transaction ?
At the time the bill was drawn by the plaintiffs in favor of the defendant, another for $3,006 was also given to the defendant.- The only consideration of these two bills was another bill, past -due, for $7,162, drawn May 31, 1855—the difference of $162 having been otherwise paid. The consideration of the last-named bill was sundry other bills. overdue, among which was one for $1,800, drawn in favor of the defendant, February 6,1855. In the discount of the bill for $1,800, the court substantially found that the “defendant paid out foreign bank-bills of a less denomination than ten dollars.
The act of May 1, 1854 (Laws of Ohio, 1854, page 83), to prohibit the circulation of such bank-bills was then in force, and rendered it “ unlawful for any person, firm, or body corporate to pass, transfer, or circulate ” bills of that description.
*A portion,, at least, of the consideration of the bill for $1,800 was such inhibited bank-bills, and was, therefore, illegal; and, under the principle before stated, the bill was wholly void. But, aside from this, the condition of paper discounted as this was, is fixed by the fifth section of said act, which provides that “ all notes, and other securities or obligations, discounted in whole or in part by any bank, banker or bankers, broker or brokers, with, or by paying out the unlawful paper, the circulation of which is by this act prohibited, shall be void, and no action shall be maintained to enforce the'collection thereof.”
There was then, in the renewal of the bill of $1,800, with others, amounting together to $7,162, a failure of consideration for the bill of the latter amount to the sum of $1,800, the amount of the void bill; and there was the same failure of consideration in the two bills of $4,000 and $3,000, given in renewal of the unpaid balance of the bill for $7,162.
If the bill for $1,800 was simply void, and therefore constituted no consideration for the bill given in the renewal thereof, and the remaining consideration of the new bill was valid, the law is well settled that it would be good to the amount of the valid consideration ; and the two bills given in renewal of the latter would be good fro tanto, each in its proportion to the valid consideration.
In the ease of Parish v. Stone, 14 Pick. 198, it was held: “’Where a promissory note is given upon two distinct and inde *128 pendent considerations, and one is a consideration which, the law deems valid and sufficient to support a contract, and the other not,, the note will be apportioned as between the original parties, or such as have the same relative rights, and the holder will recover to the extent of the valid consideration, and no further; and where-the parts of the note are not respectively liquidated and definite, the question, what amount was founded on one consideration and. what on the other, is to be settled by the jury upon the evidence.”
Upon these principles, the court of common pleas, after finding that the consideration for said bills was valid, except the amount of said void bill, properly proceeded to determine “ upon the evidence,r what amout of said invalid bill ^entered into the bill on which the judgment was rendered; and, if that part of the consideration of that bill was simply void or invalid, and not illegal, the court, properly refused to set aside the judgment after it was reduced byremittitur to the amount of the valid consideration of the bill on which it was based.
But it is claimed that, at least, a part of the consideration of the bill for $4,000, was illegal as well as void; and that the same illegality infected this bill, that rendered the bill for $1,800 void. There is certainly a wide difference between the two transactions-out of which these bills respectively originated. For one, unlawful bank-bills were passed; for the other, no money of any kind was-paid. In the giving of one of these bills, the parties committed an unlawful act, subjecting them to severe penal forfeitures; but, when-the other was executed between them, no illegal act was done. The paper given for unlawful bank-bills, is not declared, by the-statute, to be also unlawful, but it is thereby simply rendered void. Nor does the statute attach a penalty or forfeiture to either the payment or renewal of paper which it thus declares to be void. The-voluntary payment of the void bill would not have been either unlawful or immoral; and, certainly, there could be no more turpitude-in a naked promise to pay it.
In the discount of the bill for $1,800, unlawful bank-bills were-paid therefor; and, therefore, however small the amount was that entered into the consideration of the bill, the statute, nevertheless, ■ rendered the whole bill void. The statute had no other effect upon the bill discounted with the forbidden paper, than to destroy it in law, or render it void ; so that it could neither.be enforced by collection, nor become a valid consideration for another contract or *129 bill. The bill was dead when given, and the statute gave it no second life or effect beyond itself. The first bill was given for unlawful money, but the next bill, to the amount of $1,800, was given for the first bill, and for no other thing or act done. The first bill was, itself alone, the only consideration of $1,800 of the next; and, if that bill was valid, the consideration was good; but if it was void, then the consideration therefor, to that extent, failed. Herein rests the distinction between the *two bills; the first was, in part, based upon an illegal transaction; the second was not an unlawful transaction, but was based, in part, upon a void consideration; and the legal effect of the two transactions was, to make one bill void in toto, and the other pro tanto.
When the consideration is in no part illegal, but only invalid either by the common law or statute, the rule is stated by Chancellor Kent as follows: 11 When the transaction is of such a nature that the good part of the consideration can be separated from that which is bad, the courts will make the distinction; ‘ for the common law doth divide according to common reason; and having made that, void that is against law, lets the rest stand.’ The general and more-liberal principle now is, that whether any matter, void even by statute, be mixed up with good matter, which is entirely independent of it, the good part shall stand, and the rest held void; though if the part which is good depends upon that which is bad, the whole-instrument is void.” 2 Kent’s Com. *467.
But it is claimed that the act before referred to, does more than make the original paper, which was given directly for the unlawful bank-bills, void; that it also renders the bills that were given therefor, and in renewal thereof, unlawful. If this be so, then upon the principles before stated, the result must follow, though it work the forfeiture of the further valid consideration of the renewed bill,, much larger than the first.
This a court will hesitate to do, unless it comes within the dear-requirements of the statute.
Foreign bank-bills of a less denomination than ten dollars, are called in the statute, “unlawful paper;” and it is made, thereby, unlawful to pass or receive such bank-bills in any form; and the-act provides “forfeitures” for so doing. But the statute nowhere declares the paper given for such bank-bills to be unlawful; nor does it provide penalties for giving or taking the same, further than to render all such securities void. This is as far as the statute goes ¿ *130 and, having declared such securities not illegal but void only, leaves them, as we have seen, to stand upon the principles of the Acomuno n law, which “ doth divide according to common reasonand ¡'lets that stand which is based uj>on a valid consideration.
It is further claimed that, although the bill on which the judg* nnent was rendered may not be unlawful, it is still rendered void by ■sthe 2d section of said act. That section is as follows :
“ Sec. 2. That all bank-bills of less denomination than ten dollars, -unless issued by, and made payable at one of the banks of this state, in accordance with the laws of this state, and shall not directly or indirectly, be paid out or received in payment of any tax, debt, judg■ment, decree, fine, or amercement, or other demand whatever; and ¿all such unlawful paper shall be held in this state to be worthless, ;and all contracts in relation thereto null and void; and any disbursements or payments or exchange for other property of value, ¡made or attempted to be made therewith, of no effect whatever.”
The 1st section declares it to bo unlawful to pass, transfer, cir«culate, or receive such foreign bank-bills; and the 3d and 4th provide for the “ forfeitures ” for so doing. It is apparent, from the whole scope of the 2d section, that its only purpose is in further.■ance of the object of the act, to prevent the circulation of such unlawful paper, by declaring it to be worthless, and in annulling all ■transactions, so far as they are accomplished by such unlawful -paper. It would seem that the purpose was, to make all payments ■with such paper, and contracts in direct relation thereto, as worthless as the statute declares the paper itself to be. Certainly no pur•pose is clearly indicated in this section to go further and work forfeitures, to an unknown extent, of paper that sustained no relation whatever to the worthless bills, though they might become evidenced 'by the same security. This view is fortified by the provision in the ■5th section, that, as to bankers and brokers, all securities discounted “ in whole or in part ” by paying out the unlawful paper, “ the circulation of which is by this act prohibited, shall be void.” There would seem to be no necessity for this provision, if a more comprehensive meaning was intended by the 2d section; much less was there any reason for limiting it to bankers and ^brokers, or for specifying them, if everybody and all contracts were brought within the provision of the 2d section.
But it may well be doubted whether, since specific provision is :made for paper discounted by bankers and brokers, it was intended *131 to embrace this class of securities among tbe contracts mentioned in the 2d section. However that may be, there can be but little doubt, since it was the object of the statute to prevent the “ circulation ” of the inhibited paper, that its full purpose was accomplished by rendering null and void the security upon which it was put in circulation; and that it never was intended to affect subsequent transactions, based on other valid considerations further than the law affects any void consideration. It was, at most, but intended to render those contracts void, which directly related to the ■worthless paper. To give the statute a broader construction would open,the door to forfeitures not clearly declared therein, and would ■extend the statute beyond its purpose, and result only in injustice between the parties, and subserve no public interest.
But the bill for $7,162 was given in renewal of bills that never were tainted with the unlawful paper, except the amount of $1,800; and we have seen that, as to that amount, it was strictly given for the bill of $1,800, and not for the worthless money; and had no “ relation ” to that, only by construction. But forfeitures are not wrought out by construction.
It is enough to render the bill void that was directly related to the worthless bank-bills, and that brought them into circulation. This will fully subserve the spirit and letter of the act. To go further and forfeit a much larger amount of paper that had no relation whatever to any prohibition of the statute, aixd no relation to any paper rendered void by it, except that it eventually becomes evidenced by the same security, in the language of Lord Ellen-borough, upon a similar question, in the .case of Kerrison v. Cole (8 East, 231), “would be going beyond the reason and object of the legislature in order to work injustice.”

Judgment affirmed.

Brinkerhopf, C. J., and Scott, White, and Welch, JJ., concurred.